[Sac. No. 3983. In Bank.—August 27, 1928.]

DENNIS WHALEN, Jr. (a Minor), etc., Respondent, v. J. M. STRESHLEY, Appellant.

Barry & Barry, N. J. Barry and Hardin Barry for Appellant.

Ervin S. Best for Respondent.

LANGDON, J.—This is an appeal by the defendant from a judgment against him for five thousand dollars, damages for personal injuries sustained by plaintiff while riding an "unbroken" mule upon a stock ranch owned by the defendant.

J. M. Streshley, the defendant, was engaged in the business of conducting a ranch, upon which he raised hay and cattle, in Willow Creek Valley, Lassen County, and employed a number of people in this work. In July, 1924, the plaintiff was employed by said defendant to

work on the ranch as a hay hand, by the day. For some time prior to August 10, 1924, the hay hands and other employees of defendant had been riding calves, steers, cows, and unbroken horses for their own amusement. To aid them in this pastime two of the employees, after their working hours and on Sundays, had built a chute for putting the "rigging" on the stock intended to be ridden. This chute opened into a large corral, into which the animals, with their riders, were turned from the chute. Different members of the hay crew rode cattle and range horses frequently after supper and on Sundays. Plaintiff rode with the others and was present and watched the others ride. Among the boys the plaintiff was considered a good rider. He states that he rode well and that he took great pride in riding, and that on the occasion of his injury he "just wanted to ride and show off." At the time of the accident he was a boy of sixteen years of age and had had experience in riding cattle and unbroken horses. The riding was outside the scope of his employment and was for his own entertainment and amusement. The defendant had been present on some of the occasions when his employees had had these "shows," which were "handled" by Johnny Rhodes, one of the employees.

On the day of the accident, Sunday, August 10, 1924, cattle were brought into the corral and were ridden by plaintiff and other employees, and, later, plaintiff asked one of the younger boys to go into the field and get some horses for riding. This was done, and several of the employees rode the horses, the plaintiff riding a bay yearling from the chute. This animal failed to "buck," as expected and desired by the riders, but made a run through the fence. Plaintiff grabbed the fence as the animal went through and escaped injury. The defendant was present and watched the performance. Other horses were used, and, later, a mule was put into the chute for riding. According to the undisputed testimony, one of the employees, called "Rusty," was to ride this animal, but while he had gone to the barn for a drink plaintiff decided to ride the mule. He adjusted the "bull rigging" to satisfy himself and then mounted the mule freely and voluntarily and without any persuasion from anyone. He knew the mule was put into the chute to make him "buck." He expected him to buck. He had

seen many animals ridden from the chute in the same manner; he knew this mule was "unbroken," and, according to the special verdict of the jury, he had had sufficient experience to know the danger of riding this mule. Plaintiff shouted to turn the mule out and proceeded to ride him around the corral. The mule was crippled and walked upon the side of one hoof. The mule "bucked" for a time and plaintiff spurred him and urged him on. The mule soon ceased to "buck" and attempted to get away by jumping over the gate leading into the corral, but caught his foot in the gate and fell to the ground, throwing plaintiff over his head. The plaintiff struck his head on the ground and broke both jawbones. Plaintiff was experienced in riding unbroken horses and knew the conditions surrounding such a hazardous pastime.

Special interrogatories were submitted to the jury, upon which it found: That the defendant had employed the plaintiff to work on the ranch during the hay season; that plaintiff was not performing any service for defendant as a hay hand or within the scope of such employment at the time of his injury; that the riding of the mule was no part of his duty as an employee; that the defendant did not direct the plaintiff to ride the mule; that defendant was present at the time of plaintiff's injury and knew he was going to ride the mule; that defendant knew the mule was vicious; that plaintiff had sufficient experience to know the danger of riding the mule; and that he rode the mule of his own free will and that he had not been told that he could not ride the stock on the ranch. Notwithstanding these special findings the jury returned a general verdict for the plaintiff in the sum of five thousand dollars.

There are some errors in the record with reference to the ruling on the demurrer directed to the improper joinder of causes of action and other matters, but we shall not consider these matters, because we are of the opinion that, under the authorities in this and other jurisdictions, the facts found by the jury demand a judgment for the defendant.

The plaintiff in the instant case was not a child of tender years, but an alert, active, intelligent boy of sixteen years of age. He was experienced in the sport in which he engaged and took the chance of injury because of the exhilaration of the exercise and the skill in riding it developed. In

the case of *Consolidation Coal Co.* v. *Pratt,* 169 Ky. 494 [L. R. A. 1916D, 1229, 184 S. W. 369], the court stated: "The kicking propensity of the mule is a matter of common knowledge," and after discussing the facts of the case, which showed that the injured man had placed himself in a position to be kicked by a mule and had then lashed the mule, the court stated: "An employee cannot court danger by inviting and provoking a mule to kick him and then recover of the master for a consequent injury." In the instant case the injury occurred outside of the scope of the employment and on a holiday, when the plaintiff, with sufficient mentality, experience, and maturity to understand the possible consequences of his acts, mounted an unbroken mule, spurred, frightened, and angered it until it attempted to leap over a gate. His action was his free and voluntary act. Unless the case falls within the doctrine of the turntable cases—a doctrine which this court and others have refused to extend—the plaintiff may not recover, and we are of the opinion that there is no analogy between those cases and the instant one. In the case of *Peters* v. *Bowman,* 115 Cal. 345 [56 Am. St. Rep. 106, 47 Pac. 113, 598], this court refused to extend the rule of the turntable cases to a pond of water, and characterized that rule as an exceptionally harsh rule of liability.

In the case of *Studer* v. *Southern Pac. Co.,* 121 Cal. 400 [66 Am. St. Rep. 39, 53 Pac. 942], a boy of twelve years of age was held guilty of contributory negligence barring a recovery for personal injuries when he attempted to cross between the cars of a train which was blocking a crossing. The court said: "The same act which would be negligence in an adult may not be such if done by a child, but a child is required to exercise the same degree of care that would be expected from children of his age or which children of his age ordinarily exercise, and the court is as fully authorized as a jury to determine what this degree of care is. Children, as well as adults, should use the prudence and discretion which persons of their years ordinarily have, and they cannot be permitted with impunity to indulge in conduct which they know, or ought to know, to be careless."

It is true, of course, that the plaintiff in this case was not a trespasser, but, nevertheless, the defendant was not an insurer of his safety, and under the circumstances presented

by the record we think the plaintiff was guilty of negligence, as a matter of law, proximately causing his injury.

The judgment is reversed.

Curtis, J., Shenk, J., Richards, J., Waste, C. J., Preston, J., and Seawell, J., concurred.