[Sac. No. 6913. In Bank. May 5, 1959.]

DOLORES GARCIA, a Minor, etc., Respondent, v. HARRY SOOGIAN et al., Appellants.

Jack Coffey for Appellants.

Cardozo, Trimbur & Nickerson and John M. Trimbur for Respondent.

GIBSON, C. J.—In this action, which was tried by the court sitting without a jury, plaintiff recovered damages for injuries she sustained while playing on defendants' lot, and defendants have appealed.

The accident happened about 8 p. m., when it was getting dark. Plaintiff, who was 12 years and 8 months old, had trespassed on defendants' lot in order to play a form of hide-and-seek with other children. She cut her ankle when, running in pursuit of a playmate, she attempted to jump over a stack of prefabricated building panels containing windows, failed to clear the stack, and landed on top, her foot crashing through the glass. The panels over which she jumped were part of building materials stored on the lot by defendants for the purpose of erecting several prefabricated houses. The materials had been placed about 120 to 150 feet back from the street. The panels with glass, each weighing about 200 pounds, had been stacked in firm, orderly piles which were from 24 to 30 inches high, 8 feet long and at least 4 feet wide. Plaintiff's sister, who was one of the children on the lot at the

time of the accident, testified that she saw the stacks that evening and that none of them were covered. There was other testimony that at least two of the piles were uncovered. During working hours defendants, who were engaged in building at a nearby site, watched the lot and ordered children away, and, in the absence of defendants, a man who lived in the vicinity did the same on their behalf whenever he saw children on the lot.

The sole question presented on this appeal is whether the judgment is supported by the evidence.

■ Section 339 of the Restatement of Torts reads: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." The rule set forth in section 339 has been adopted as the law of this state. (*Courtell* v. *McEachen,* 51 Cal.2d 448, 457-458 [334 P.2d 870] ; *Reynolds* v. *Willson,* 51 Cal.2d 94, 103 [331 P.2d 48].)

■ It is apparent that the application of this rule depends upon a number of variable factors. The question of liability must be decided in the light of all the circumstances and not by arbitrarily placing cases in rigid categories on the basis of the type of condition involved without giving due consideration to the effect of all the factors in a particular situation. There is no inflexible rule which would exclude liability in every case involving building materials or buildings under construction, and each such case must be judged on its own facts. Although there are some cases of this type in which recovery has been denied (*Knight* v. *Kaiser Co.,* 48 Cal.2d 778 [312 P.2d 1089] ; *Lopez* v. *Capitol Co.,* 141 Cal.App.2d 60 [296 P.2d 63] ; *Camp* v. *Peel,* 33 Cal.App.2d 612 [92 P.2d 428]), there are others recognizing that liability may exist (*Woods* v. *City & County of San Francisco,* 148 Cal.App.2d 958 [307 P.2d 698] ; *Morse* v. *Douglas,* 107 Cal.App. 196 [290 P. 465]).

The circumstance that a condition giving rise to injury is common in character does not necessarily exclude liability. Of course, if a dangerous condition is common, children are more likely to be aware of the risk than if the condition is unusual, but it does not follow that common conditions can, under no circumstances, give rise to dangers which are not obvious to children. What is important is not whether conditions are common in character but whether their dangers are fully understood by children. In discussing the duty of care owed by the possessor of land in connection with the ability of children to appreciate the risk presented, the Restatement says, in comment (b) to section 339, that the duty extends to dangerous conditions "which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but which are beyond the imperfect realization of children." The duty, of course, does not extend to "those conditions the existence of which is obvious even to children and the risk of which is fully realized by them." (Rest., Torts, § 339, comment (b).) The further statement in comment (b) that the limitation on the duty operates to remove liability with respect to "the normal, necessary and usual implements which are essential to [the land's] normal use," appears in a sentence which, when taken as a whole, refers only to those situations in which children, knowing the danger of the implements as fully as adults, use them "in a spirit of bravado."*

There is thus no justification for regarding the commonness of a condition as having a decisive significance independent of the obviousness of the risk. Unfortunately, several cases, both in allowing and denying recovery, have used broad language which could be understood as meaning that a common condition can never give rise to liability. (*Knight* v. *Kaiser Co.*, 48 Cal.2d 778, 782 [312 P.2d 1089] ; *Doyle* v. *Pacific Electric Ry. Co.*, 6 Cal.2d 550, 552 [59 P.2d 93] ; *Wilford* v. *Little*, 144 Cal.App.2d 477 [301 P.2d 282] ; *Lopez* v. *Capitol Co.*, 141 Cal.App.2d 60, 65 [296 P.2d 63] ; *Clark* v. *Pacific Gas & Elec.*

*The sentence in question reads: "This limitation of the possessor's liability to conditions dangerous to children, because of their inability to appreciate their surroundings or to realize the risk involved therein, frees the possessor of land from the danger of liability to which he would otherwise be subjected by maintaining on the land the normal, necessary and usual implements which are essential to its normal use but which reckless children can use to their harm in a spirit of bravado or to gratify some other childish desire and with as full a perception of the risks which they are running as though they were adults." (Rest., Torts, § 339, comment (b).)

*Co.,* 118 Cal.App. 344, 348 [5 P.2d 58, 6 P.2d 297]; *Morse* v. *Douglas,* 107 Cal.App. 196, 201 [290 P. 465].) Dean Prosser correctly points out: ''Many courts have said that the doctrine does not apply to common conditions . . . or that it is limited to . . . special and unusual conditions of modern industry; but all such statements appear to be made with reference to the particular case, and to be directed at nothing more than the existence of a recognizable and unreasonable risk of harm to the child.'' (Prosser on Torts (2d ed. 1955) 443. See also *Reynolds* v. *Willson,* 51 Cal.2d 94, 103 [331 P.2d 48].)

A common condition, namely, fire or embers, led to the injuries of the minor plaintiff in the recent case of *Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870], and we held that, if the condition causing the accident was not obvious to the child, there could be liability under the law applicable to trespassing children. Other cases involving conditions which could be considered as common in character have reached the same result. (*Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126 [138 P. 712]; *Cahill* v. *E. B. & A. L. Stone & Co.,* 153 Cal. 571 [96 P. 84, 19 L.R.A. N.S. 1094]; *Edler* v. *Sepulveda Park Apts.,* 141 Cal.App.2d 675 [297 P.2d 508]; *Copfer* v. *Golden,* 135 Cal.App.2d 623 [288 P.2d 90]; *Long* v. *Standard Oil Co.,* 92 Cal.App.2d 455 [207 P.2d 837].) We wish to emphasize that the mere fact that the condition causing an injury is common in character will not prevent recovery by a trespassing child.

With respect to whether the circumstances of this case warrant recovery, it should be kept in mind that a possessor of land is not under a duty to prevent every possibility of harm but only to exercise due care as to those risks which he should realize are unreasonably great and threaten serious bodily harm in a way unlikely to be appreciated by children whose trespass he should foresee. The ability to appreciate danger varies, of course, with the age of the child, and there can be no recovery if the child is of sufficient age and mental capacity to look out for himself under the circumstances presented. (See Prosser on Torts (2d ed. 1955) 441, 443-444; 2 Harper and James, The Law of Torts, 1453-1454.)

. As we have seen, the panels containing windows were heavy and were firmly stacked a considerable distance from the street in such a manner that the glass could be reached only at the top of the piles, 24 to 30 inches from the ground. The chance was slight that a child of plaintiff's age would fail to see the glass or appreciate what risk was presented, and there

is no evidence that plaintiff was of less than average intelligence for her age. It may be, as plaintiff in effect testified, that, because it was getting dark, she did not see the glass before jumping, but defendants could not reasonably be required to foresee that there was any substantial likelihood that a normal child of more than 12 would not appreciate the danger of jumping over a large pile of building materials when darkness prevented sufficient perception of the nature of the obstacle. In the light of the undisputed facts now before us, there is no sound basis for concluding that the condition which caused plaintiff's injury should have been recognized as constituting an unreasonably great risk of serious bodily harm which plaintiff was unable to discover or appreciate because of her immaturity. Accordingly, the evidence did not warrant a recovery by plaintiff.

The judgment is reversed.

Shenk, J., Traynor, J., and Peters, J., concurred.

SPENCE, J., Concurring and Dissenting.—I concur in the judgment of reversal, but for the reasons hereinafter stated, I am of the opinion that such reversal should be accompanied with directions to enter judgment in favor of the defendants.

This is another of a series of recent appeals involving the same fundamental question, namely, the nature of the duty owed by the landowner to the trespassing child with respect to the condition of the landowner's premises. While I agree with the majority that "the evidence does not bring the case within the rule set forth in section 339 of the Restatement of Torts," I am further of the opinion that the reversal should be squarely based upon the decisional law of this state involving comparable situations in connection with building materials or with buildings under construction such as *Knight* v. *Kaiser Co.*, 48 Cal.2d 778 [312 P.2d 1089] ; *Lopez* v. *Capitol Co.*, 141 Cal.App.2d 60 [296 P.2d 63] ; *Saba* v. *Jacobs*, 130 Cal. App.2d 717 [279 P.2d 826] ; and *Camp* v. *Peel*, 33 Cal.App.2d 612 [92 P.2d 428]. Such reversal finds added support in numerous other "former cases," only a few of which need be cited. (*Melendez* v. *City of Los Angeles*, 8 Cal.2d 741 [68 P.2d 971] ; *Peters* v. *Bowman*, 115 Cal. 345 [47 P. 113, 598, 56 Am.St.Rep. 106] ; *Wilford* v. *Little*, 144 Cal.App.2d 477 [301 P.2d 282] ; *Lake* v. *Ferrer*, 139 Cal.App.2d 114 [293 P.2d 104] ; *Ward* v. *Oakley Co.*, 125 Cal.App.2d 840 [271 P.2d 536] ; *Betts* v. *City & County of San Francisco*, 108 Cal.App.

2d 701 [239 P.2d 456] ; *Demmer* v. *City of Eureka*, 78 Cal.App.
2d 708 [178 P.2d 472] ; *King* v. *Simons Brick Co.*, 52 Cal.App.
2d 586 [126 P.2d 627] ; *Beeson* v. *City of Los Angeles*, 115 Cal.
App. 122 [300 P. 993] ; *Reardon* v. *Spring Valley Water Co.*,
68 Cal.App. 13 [228 P. 406] ; *Polk* v. *Laurel Hill Cemetery
Assn.*, 37 Cal.App. 624 [174 P. 414].)

While the reversal ordered by the majority here is entirely
consistent with the long line of ''former cases,'' I am of the
opinion that such reversal is inconsistent with the majority
opinions in *Reynolds* v. *Willson*, 51 Cal.2d 94 [331 P.2d 48],
and *Courtell* v. *McEachen*, 51 Cal.2d 448 [334 P.2d 870]. I
discussed the inconsistency of the Reynolds and Courtell opin-
ions with the ''former cases'' in my dissenting opinion in those
cases, and need not repeat that discussion here. Suffice it to
say that each of those cases, like the present one, involved only
a common, obvious risk rather than some uncommon or con-
cealed risk such as had been previously required to bring the
condition within any recognized exception to the general rule
which limits the duty owed by the landowner to the tres-
passing child.

If the well-considered rules established by the ''former
cases'' are to be disregarded upon the ground that they put
cases ''in rigid categories on the basis of the type of condition
involved,'' then the majority should expressly disapprove
those cases, rather than being content with giving them passing
reference and leaving to possible conflicting implications the
question of whether those cases are being approved or dis-
approved. However, it should be stated in this connection that
a legal principle which is supported by sound reason and
abundant authority, should not be disregarded merely because
it may impart a fair degree of certainty, or even rigidity, to
an important phase of the law. Adherence to well-considered
and well-established guiding principles makes for stability in
the law while, on the other hand, the jumping from case to
case, without following any consistent pattern and without
regard for established principles, can only create endless
confusion.

The guiding principle established by the ''former cases''
prevented the imposition of liability upon the landowner in
favor of the trespassing child when the risk encountered was
one which was *''common and obvious.''* (See dissenting opinion
in *Reynolds* v. *Willson*, *supra*, 51 Cal.2d 106.) An objective
standard was applied in determining as a matter of law
whether any particular risk was ''common and obvious,'' and

that standard was properly determined in the light of common knowledge that ''There are some dangers common in the community which any child of sufficient age to be allowed at large may be expected to understand and appreciate. . . .'' (Prosser on Torts, 2d ed., p. 441.) The majority opinion here indicates that there are other ''variable factors'' to be considered, including ''the age'' and ''mental capacity'' of the particular child trespasser. No support for this view is to be found in any of the former cases,'' and any such rule would obviously place upon the landowner the wholly unjustifiable burden of making his premises safe for trespassing children who are of insufficient age or mental capacity to be allowed at large.

It may be conceded, as the majority opinion declares, that ''There is no inflexible rule which would exclude liability in every case involving building materials or buildings under construction, and each such case must be judged on its own facts.'' No such ''inflexible rule'' has been declared in any of the ''former cases,'' and no such rule has been suggested in any of the recent dissenting opinions. On the contrary, it has been generally recognized that there may be uncommon or concealed risks in connection with building materials or buildings under construction, but it is clear that the ''ordinary conditions, presenting only common and obvious danger or risk of harm to the trespassing child, are not of the type which has heretofore been held to fall within'' any exception to the general rule so as to permit the imposition of liability upon the landowner. (*Reynolds* v. *Willson,* dissenting opinion, *supra,* 51 Cal.2d 106, 114.)

There are but few cases cited in the majority opinion which have not been previously discussed in the dissenting opinions in the Reynolds and Courtell cases, and those few cases are generally in line with the other ''former cases.'' *Woods* v. *City & County of San Francisco,* 148 Cal.App.2d 958 [307 P.2d 698], cited by the majority, merely held that ''The defendant's demurrer was properly sustained but it should not have been sustained without leave to amend.'' (P. 966.) In so ruling, however, the court recognized the established rule that there could be no recovery by the trespassing child if ''there was no novel or hidden danger.'' (P. 963.)

The majority also cites *Morse* v. *Douglas,* 107 Cal.App. 196 [290 P. 465], where a trailer containing a vat of hot tar was left ''in the street'' with the tongue ''resting upon a pile of sand in the space between the sidewalk and the curb'' (p. 198) and in a position where the trailer might be easily ''tipped

backwards" (p. 199), thereby spilling the hot tar. The judgment for plaintiff was properly affirmed, as the equipment obviously "provided an uncommon danger." (P. 202.)

The Cahill cases cited by the majority (*Cahill* v. *E. B. & A. L. Stone & Co.,* 153 Cal. 571 [96 P. 84, 19 L.R.A. N.S. 1094], and *Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126 [138 P. 712]) also involved an accident which occurred upon the street, rather than upon private premises. The defendant left a push-car heavily loaded with steel rails on a track in the street, where there was a slight grade, "unguarded by any person, uninclosed, unlocked, and unfastened, without any brake or device for stopping it when started." (153 Cal. 572.) The judgment imposing liability there was properly affirmed upon the analogy to the "turn-table cases" (153 Cal. 573; 167 Cal. 136), which cases obviously present something other than a risk which is "common and obvious."

The case of *Edler* v. *Sepulveda Park Apts.,* 141 Cal.App.2d 675 [297 P.2d 508], cited in the majority opinion, is not in point, as plaintiff's parents were tenants in one of defendant's 60 apartments; and plaintiff was injured by falling in a hole dug by defendant in the lawn surrounding the apartments where the children were accustomed to play. Thus, the child was not a trespasser.

The case of *Long* v. *Standard Oil Co.,* 92 Cal.App.2d 455 [207 P.2d 837], also cited by the majority, was discussed to some extent in my dissent in the Reynolds case. (*Reynolds* v. *Willson, supra,* 51 Cal.2d 106, 116.) It should be added, however, that the court there declared that "The instructions drew a proper distinction between conditions which are open and obvious and those that are concealed or hidden." (P. 463.)

Thus, with the possible exception to be hereinafter noted, none of the cases cited in the majority opinion or in the briefs sustain the reasoning employed by the majority here or the reasoning employed by the majority in the Reynolds and Courtell cases with respect to the fundamental question involved. The exception above mentioned is the case of *Copfer* v. *Golden,* 135 Cal.App.2d 623 [288 P.2d 90]. That case was relied upon by the respondent, the trial court, and the District Court of Appeal in the Reynolds case. (See *Reynolds* v. *Willson* (Cal.App.), 308 P.2d 464.) Similiar reliance was placed upon the Copfer case here. (See *Garcia* v. *Soogian,* (Cal. App.) 319 P.2d 742.) In my opinion, the Copfer case and its erroneous interpretation of section 339 of the Restatement of Torts should be disapproved. (See dissenting opinion in

*Reynolds* v. *Willson, supra,* 51 Cal.2d 106.) The Copfer case cannot be reconciled with the "former cases," and it certainly cannot be reconciled with the majority's reversal in this case. Nevertheless, no mention whatever has been made of the Copfer case in the majority opinion here or in the majority opinions in the Reynolds or Courtell cases. In the absence of any mention of the Copfer case or of any adequate discussion of the "former cases," it therefore becomes difficult, if not impossible, to determine the full implication of any of these recent majority opinions. Hence, the bench and bar will still be required to speculate upon at least two important questions. First, is the majority impliedly approving or, on the other hand, "disapproving the former cases," as advocated by the dissenting Justices in *Knight* v. *Kaiser Co., supra,* 48 Cal.2d 778, 785? Second, is the majority impliedly approving or disapproving the decision in *Copfer* v. *Golden, supra,* 135 Cal.App.2d 623, and its erroneous interpretation of section 339 of the Restatement of Torts?

The confusion which is following in the wake of the Copfer case is again illustrated by the decision of the trial court here. Apparently following the holding and accepting some of the reasoning of that case, the trial court made only a finding of "a reasonable risk" rather than "an unreasonable risk" of harm, as required by section 339. Similar confusion will inevitably continue until such time as the majority may clarify the situation by expressly disapproving the Copfer case and by reaffirming the well-considered rules established by *Knight* v. *Kaiser Co., supra,* 48 Cal.2d 778, and the long line of "former cases" upon which it was based. But regardless of whether the majority may see fit to approve or disapprove the Copfer case, or to approve or disapprove the "former cases" as well as *Knight* v. *Kaiser Co., supra,* the position of the majority should be made clear. The existing chaos will only be perpetuated by continuing to quote section 339 of the Restatement of Torts without adequately discussing its relation to the "former cases," and then resting upon the truism that "recovery is granted or denied depending on the facts of each case." (*Reynolds* v. *Willson, supra,* 51 Cal.2d 94, 106.) Just as the conflict between the two divergent lines of cases and the conflict between the varying constructions placed upon section 339 become more apparent with the filing of each decision, so the duty of this court to resolve those conflicts becomes more imperative. Clarification could be easily accomplished by frankly recognizing the conflict and by meeting

118

the issue squarely; but until that is done, the bench and bar will be compelled to journey on insecure footing over uncertain legal ground in a perplexing situation similar to that described by Justice Learned Hand when he said: ''It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass.'' (*Hutchinson* v. *Chase & Gilbert*, 45 F.2d 139, 142.)

For the reasons stated, and for the added reason that there is no suggestion that any further evidence could be adduced which would justify the imposition of liability upon the defendants, I would reverse the judgment with directions to the trial court to enter judgment in favor of the defendants.

Schauer, J., and McComb, J., concurred.